**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**(Eastern Division)**

---------------------------------------------------------------x
In re                                                            :
                                                                 :    Chapter 7
DECISION BIOMARKERS INCORPORATED, :
                                                                 :    Case No. 09-22325 (WCH)
                               Debtor.                           :
                                                                 :
---------------------------------------------------------------x

**MOTION OF AVANTRA BIOSCIENCES CORPORATION**
**FOR RELIEF FROM THE AUTOMATIC STAY**

TO THE HONORABLE WILLIAM C. HILLMAN
UNITED STATES BANKRUPTCY JUDGE:

Avantra Biosciences Corporation ("Avantra"), the holder of claims against Decision Biomarkers Incorporated ("Decision Biomarkers" or "Debtor"), which claims are secured by valid, perfected and enforceable first priority liens on substantially all of the Debtor's property, by and through its undersigned counsel, submits this motion (the "Motion") for an order (i) granting Avantra relief from the automatic stay pursuant to section 362(d) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Local Bankruptcy Rules for the District of Massachusetts (the "Local Rules") to allow it to exercise its rights and remedies against the collateral securing its claims, pursuant to the Loan and Security Agreement and the IP Agreement (each, as defined below) and applicable state and federal law, and (ii) waiving the ten day stay period otherwise applicable to such an order, pursuant to Bankruptcy Rule 4001(a), and respectfully represents:

**PRELIMINARY STATEMENT**

1. On December 31, 2009, Avantra purchased an assignment of all of Silicon Valley Bank's ("SV Bank") right, title, and interest arising under certain loan documents

NYA 615619.12

evidencing a secured prepetition loan SV Bank made to Decision Biomarkers. The loan is secured by collateral comprising substantially all of the Debtor's assets. As the holder of valid, perfected and enforceable first priority liens on the collateral, Avantra seeks relief from the automatic stay to exercise its rights and remedies against the collateral as provided for under the loan documents and applicable state and federal law.

2. Relief from the automatic stay is clearly warranted here. The Debtor has terminated its business operations, dismissed its employees, and has no apparent resources with which to repay the outstanding amount of approximately $2.8 million due and owing to Avantra under the loan documents. The collateral, consisting primarily of patents, copyrights and trademarks, is declining in value, and adequate protection is unavailable. Simply put, the Debtor does not have the capital and other resources necessary to reorganize its business and exploit the development of its intellectual property. Indeed, by commencing a case under chapter 7 of the Bankruptcy Code, the Debtor has manifested its intention to liquidate its assets rather than reorganize its business and restructure its debts, and thus does not require the collateral for an effective reorganization. Accordingly, relief from the automatic stay should be granted to Avantra.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding within 28 U.S.C. §157(b)(2)(G). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**FACTUAL BACKGROUND**

4. On December 22, 2009 (the "Commencement Date"), the Debtor commenced a case under chapter 7 of the Bankruptcy Code (the "Chapter 7 Case"). On

2

December 23, 2009, the Office of the United States Trustee appointed Harold B. Murphy as chapter 7 Trustee.

5. Prior to the Commencement Date, the Debtor, a life science tools company, developed and manufactured protein biomarker analysis systems for pharmaceutical research and development in the biotechnology industry. The Debtor is a privately held company organized under the laws of the State of Delaware.

6. In the Debtor's bankruptcy petition, the Debtor states the value of its assets as falling somewhere in the range of $0 to $50,000 and its liabilities as $1 million to $10 million.[1] *See* Docket No. 1. The Debtor has dismissed its employees and ceased its business operations.

### A. The Loan and Security Agreement

7. On May 27, 2008, SV Bank and Decision Biomarkers entered into a Loan and Security Agreement, as amended by a First Loan Modification Agreement, dated as of June 12, 2009, and as further amended by a Second Loan Modification Agreement, dated as of October 30, 2009 (collectively, as amended, the "Loan and Security Agreement"), pursuant to which SV Bank made a loan to Decision Biomarkers in the aggregate principal amount of $3 million (the "Loan"). Copies of the documents comprising the Loan and Security Agreement are attached hereto as "Exhibit A."

8. To secure its obligations to repay principal and interest due under the Loan and any related fees and other charges, Decision Biomarkers granted to SV Bank a security interest in (i) substantially all of Decision Biomarkers' personal property, as provided in Exhibit A to the Loan and Security Agreement (the "Personal Property Collateral")[2], and (ii) Decision

---

[1] By Order dated January 11, 2010, the deadline by which the Debtor was required to file its financial schedules and statements was extended to January 15, 2010. *See* Docket No. 13.
[2] As described in the Loan and Security Agreement, the Personal Property Collateral consists of:

3

Biomarkers' intellectual property, including patents, copyrights and trademarks (the "IP Collateral," and together with the Personal Property Collateral, the "Collateral"), pursuant to that certain Intellectual Property Security Agreement, dated as of May 27, 2008, between Decision Biomarkers and SV Bank (the "IP Agreement," and together with the Loan and Security Agreement and related documents, the "Loan Documents").  A copy of the IP Agreement is attached hereto as "Exhibit B."  The Collateral comprises substantially all of the assets of Decision Biomarkers.

9. Also, on May 27, 2008, in connection with making the loan, SV Bank entered into certain Subordination Agreements with four other holders of security interests and liens in the Collateral, pursuant to which such lienholders agreed to subordinate their right to payment, and their respective security interests and liens in the Collateral to that of SV Bank (the "Subordinated Lienholders").[3]  Copies of the four Subordination Agreements are attached hereto as "Exhibit C."  The security interests of the Subordinated Lienholders are unrecorded.

10. On May 28, 2008, SV Bank filed a UCC-1 financing statement with the Secretary of State for the State of Delaware which validly perfected SV Bank's security interest in the Collateral.  A copy of the financing statement is attached hereto as "Exhibit D."

---

All goods, Accounts (including health-care receivables), Equipment, Inventory, contract rights or rights to payment of money, leases, license agreements, franchise agreements, General Intangibles, commercial tort claims, documents, instruments (including any promissory notes), chattel paper (whether tangible or electronic), cash, deposit accounts, certificates of deposit, fixtures, letters of credit rights (whether or not the letter of credit is evidenced by a writing), securities, and all other investment property, supporting obligations, and financial assets, whether now owned or hereafter acquired, wherever located; and

All Borrower's Books relating to the foregoing, and any and all claims, rights and interests in any of the above and all substitutions for, additions, attachments, accessories, accessions and improvements to and replacements, products, proceeds and insurance proceeds of any or all of the foregoing.

[3] The Subordinated Lienholders are (i) Rock Maple Ventures, L.P., (ii) Jean Montagu, (iii) Charles Popkin, and (iv) Roger Dowd, as reflected in Exhibit C.

4

NYA 615619.12

11. On June 16, 2008, pursuant to the IP Agreement, SV Bank recorded the granting of the security interest and lien on the IP Collateral with the United States Patent and Trademark Office (the "USPTO"). A copy of the recordation of the assignment is attached hereto as "Exhibit E."

12. The Debtor's commencement of the Chapter 7 Case is an Event of Default under Section 8.5 of the Loan and Security Agreement and Section 7(a) of the IP Agreement. Under Section 9.1(a) of the Loan and Security Agreement, upon an Event of Default, all outstanding obligations thereunder are accelerated and become immediately due and payable. In addition, pursuant to Section 9.1(j) of the Loan and Security Agreement, upon the occurrence of an Event of Default, SV Bank is entitled to:

> exercise all rights and remedies available . . . under the Loan Documents or at law or equity, including all remedies provided under the [Uniform Commercial Code] (including the disposal of the Collateral pursuant to the terms thereof)

13. As of the Commencement Date, the aggregate outstanding balance under the Loan Documents is approximately $2,768,250.00, including accrued and unpaid principal and interest, and other fees and charges. Accordingly, SV Bank has a secured claim in the Chapter 7 Case for this amount.

**B.  Assignment and Sale to Avantra of
     SV Bank's Interests in the Loan Documents**

14. On December 31, 2009, for good and valuable consideration, Avantra purchased an assignment of all of SV Bank's right, title, and interest in and to the Loan Documents and SV Bank's security interest in and lien on the Collateral, pursuant to that certain Non Recourse Loan Document Sale and Assignment Agreement (the "Assignment Agreement"). A redacted copy of the Assignment Agreement is attached hereto as "Exhibit F."

5

15. In connection with the diligence review it performed prior to entering into the Assignment Agreement, on December 29, 2009, Avantra conducted a UCC lien search to identify any other recorded liens in respect of the Collateral. The search results confirm that SV Bank holds the only recorded and perfected lien against the Collateral. A prior lien in the name of Comerica Bank San Jose was terminated on June 5, 2008. A copy of the UCC search is attached hereto as "Exhibit G."

16. Avantra conducted a search for other liens that may have been filed with the USPTO against trademark applications and registrations owned by Decision Biomarkers. The report shows there are no such other recorded liens. A copy of the search report is attached hereto as "Exhibit H."

17. On January 11, 2010, Avantra filed an amended UCC-3 (Uniform Commercial Code) financing statement with the Secretary of State for the State of Delaware to reflect in the public record its purchase of SV Bank's rights and the transfer and assignment to Avantra of SV Bank's lien on and security interest in the Collateral. A copy of the amended financing statement is attached hereto as "Exhibit I."

**C.  Other Liens or Interests in the Collateral**

18. Prior to the Commencement Date, Fish & Richardson P.C. ("F&R") performed legal services for Decision Biomarkers relating to patent prosecution before the USPTO. Decision Biomarkers failed to remit payment to F&R for the legal services it rendered to the Debtor, as reflected in the invoices attached hereto as "Exhibit J" which show an aggregate amount owing to F&R of $71,107.41 (the "Indebtedness"). Accordingly, on December 10, 2009, pursuant to Massachusetts General Laws, Ch. 221, Section 50, F&R filed a lien in the USPTO (the "F&R Lien") on all patent applications filed and prosecuted before the USPTO by F&R on behalf of Decision Biomarkers, and upon any proceeds derived therefrom, that were the product

6

of the legal services giving rise to the Indebtedness.  Certain portions of the F&R Lien arose before the effective date of the Loan Documents, which provided the F&R Lien with priority over certain of Avantra's liens in the IP Collateral under the Loan Documents.  A copy of the recorded F&R Lien is attached hereto as "Exhibit K."

19. Pursuant to an assignment dated as of January 8, 2010, Avantra purchased all of F&R's right, title, and interest in and to the Indebtedness and the F&R Lien, for good and valuable consideration (the "<u>F&R Assignment and Conveyance</u>").  A redacted copy of the F&R Assignment and Conveyance is attached hereto as "Exhibit L."

20. In connection with the diligence associated with the F&R Assignment and Conveyance, on January 7, 2010, Avantra conducted a search for other liens that may have been filed with the USPTO against patents and patent applications owned by Decision Biomarkers.  The search report showed there are no such other recorded liens.  A copy of the search report is attached hereto as "Exhibit M."

21. Based upon all of the foregoing, Avantra is the sole perfected first priority lienholder against the Collateral.  Avantra purchased and received an assignment, for good and valuable consideration, of (i) SV Bank's claims and liens on the Collateral granted under the Loan Documents, (ii) F&R's claims and the F&R Lien against Decision Biomarkers' patents.  Such liens are validly perfected and enforceable and a UCC search and USPTO search reveal no other recorded liens or holders of any other interests in the Collateral.

## ARGUMENT

22. Section 362(d) of the Bankruptcy Code authorizes relief from the automatic stay if a party with an interest in property of the estate can demonstrate "cause," including lack of adequate protection, or establish that the debtor has no equity in the property

and the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d). Specifically, sections 362(d)(1) and (2) of the Bankruptcy Code provide as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay -
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if-
>
>   (A) the debtor does not have equity in such property; and
>
>   (B) such property is not necessary to an effective reorganization.

11 U.S.C. §§ 362 (d)(1) and (2).

23. For the reasons set forth below, relief from the automatic stay is warranted on both statutory grounds. First, "cause" for relief from the automatic stay exists under section 362(d)(1) of the Bankruptcy Code because there is a lack of adequate protection for Avantra's secured interests. Second, Avantra is entitled to relief from the automatic stay under section 362(d)(2) because the Debtor has no equity in the Collateral and the Collateral is not necessary to the Debtor's reorganization.

### A. Avantra is Entitled to Relief From the Automatic Stay Under § 362(d)(1)

24. Section 362(d)(1) of the Bankruptcy Code allows a party in interest to obtain relief from the automatic stay for "cause." Neither the statute nor the legislative history defines the term "for cause." *In re Haines*, 309 B.R. 668, 674 (Bankr. D. Mass. 2004) (stating that "numerous courts have observed that 'cause' is not defined"); *Goya Foods Inc. v. Unanue-Casal (In re Unanue-Casal)*, 159 B.R. 90, 95 (D.P.R. 1993), *aff'd*, 23 F.3d 395 (1st Cir. 1994). The determination of whether "cause" exists is made on a "case-by-case basis." *In re Haines*, 309 B.R. 668, 674. "The most express guidance [in the legislative history of section 362 of the

Bankruptcy Code] is that cause can include the lack of adequate protection of an interest in property." *In re Unanue*-Casal, 159 B.R. 90, 95 and, *In re First Barnstable Corp.*, 108 B.R. 372, 376 (moving party is entitled to relief from the automatic stay if it can show "cause," which is defined to include "the lack of adequate protection of an interest in property").  Further, the statute itself explicitly states that "cause" includes "lack of adequate protection of an interest in property of such party interest."  11 U.S.C. § 362(d)(1).  In the context of section 362(d)(1), adequate protection is necessary when the value of a party's interest in property held or used by the debtor is or will be diminished due to the imposition of the automatic stay.  *See In re Saypol*, 31 B.R. 796, 800 (Bankr. S.D.N.Y. 1983).

25. Under the facts presented here, the Collateral will continue to decline in value unless Avantra is granted relief from the automatic stay.  Intellectual property such as patents, for example, have a limited life span, and thus, *per se*, decrease in value as time elapses and the patent approaches its expiration date.  *Uniroyal Engineered Prods., LLC v. Omnova Solutions, Inc.*, 2009 U.S. Dist. LEXIS 22518 at * 12 (W.D. Wis. Mar. 18, 2009) (explaining that "a patent holder's rights are time sensitive and any delay may decrease the value of the patent") (*citing Milwaukee Electric Tool Corp. v. Black & Decker (N.A.) Inc.*, 392 F. Supp. 2d 1062, 1065 (W.D. Wis. 2005); *see also Sky Technologies LLC v. SAP AG and SAP America, Inc.*, 576 F.3d 1374, 1381-82 (Fed. Cir. 2009) (stating that if patents could not be transferred to a secured creditor in a foreclosure on security interests secured by patent collateral, "the value of patents could significantly diminish").  Given the Debtor's cessation of operations and its lack of financial and human resources to exploit its intellectual property and restart its business, the Collateral is diminishing in value while it remains trapped in the estate.  Under such circumstances, the Debtor cannot possibly provide Avantra with adequate protection for its interests in the Collateral.

26. A review of the nonexclusive methods of providing adequate protection set forth in section 361 of the Bankruptcy Code further demonstrates why cause exists to lift the automatic stay. First, the Debtor has no reliable source of cash and therefore cannot adequately protect Avantra with current cash payments. 11 U.S.C. § 361(1). Second, Avantra already has liens on all the Collateral, which comprises substantially all of the Debtor's assets, and therefore the Debtor cannot provide any meaningful additional or replacement liens as adequate protection. 11 U.S.C. § 361(2). Lastly, the Debtor cannot provide such other relief as will result in Avantra receiving the "indubitable equivalent" of its interest in the Collateral. 11 U.S.C. § 361(3).

## B. Avantra is Entitled to Relief From the Automatic Stay Under § 362(d)(2)

27. As this Court has held, "[a] motion for relief from stay should be granted if the debtor has no equity in the property and it is not necessary for an effective reorganization." *In re L. G. Salem L.P.*, 140 B.R. 932, 935 (Bankr. D. Mass. 1992) (William C. Hillman, U.S.B.J.) (*citing* 11 U.S.C. § 362(d)(2)); *In re First Barnstable Corp.*, 108 B.R. 372, 376 (Bankr. D. Mass. 1989) (granting secured creditor relief from the automatic stay on the grounds the debtor did not have any equity in the property, the debtor had no prospect of reorganizing, and the creditor's interest in the property was not adequately protected).

28. Avantra is entitled to relief from the automatic stay under section 362(d)(2) of the Bankruptcy Code because the facts presented here show the requirements of the statute are satisfied as (i) the Debtor lacks any equity in the Collateral and (ii) the Debtor lacks any reasonable likelihood of an effective reorganization.

*(i) The Debtor Lacks any Equity in the Collateral*

29. "A debtor has no equity in the property for purposes of section 362(d)(2) when the debts secured by liens on the property exceed the value of the property." 3 Lawrence P.

10

King, Collier on Bankruptcy, ¶ 362.07[4][a] (15th ed. 2002); *see also In re Daly*, 167 B.R. 734, 735 (Bankr. D. Mass. 1994); *First Agricultural Batik v. Jug End in the Berkshires, Inc. (In re Jug End in the Berkshires, Inc)*, 46 B.R. 892, 901 (Bankr. D. Mass. 1985).

30. The Debtor has no equity in the Collateral. In the Debtor's bankruptcy petition, the Debtor itself values its assets as worth somewhere between $0 and $50,000. *See* Docket No. 1. However, Avantra holds (i) a secured claim against the Debtor in the amount of $2,768,250.00, comprised of the unpaid principal and interest and other related fees and charges due under the Loan Documents, plus (ii) a secured claim against the Debtor in the amount of $71,107.41 related to the Indebtedness and F&R Lien. As such, the Debtor lacks any equity in the Collateral.

*(ii) The Collateral is not Necessary for an Effective Reorganization*

31. To prevail against a request of a party in interest for relief from the automatic stay under section 362(d)(2)(B) of the Bankruptcy Code, the Debtor must demonstrate that there exists "a reasonable possibility of a successful reorganization within a reasonable time." *U.S. Savings Assoc. of Tex. v. Timbers Of Inwood Forest Assoc., L.P.*, 484 U.S. 365, 376 (1988); *In re Daly*, 167 B.R. 734, 735 (concluding the Debtor failed to satisfy its burden of proving the existence of a reasonable possibility of a successful reorganization); *In re L. G. Salem L.P.*, 140 B.R. 932, 935; *In re Channel Realty Assoc. L.P.*, 142 B.R. 597, 600 (Bankr. D. Mass. 1992).

32. Under section 362(g)(2) of the Bankruptcy Code, the burden of proof is on the Debtor to show the collateral is necessary for an effective reorganization. 11 U.S.C. § 362(g)(2); *In re Building 62 Ltd. P'ship*, 132 B.R. 219 (Bankr. D. Mass 1991); *In re Jug End in Berkshires, Inc.*, 46 B.R. 892, 902. To satisfy its burden, the debtor must show there is "a reasonable possibility of a successful reorganization within a reasonable time," and that the

11

property at issue is necessary to that reorganization.  *U.S. Savings Assoc. of Tex. v. Timbers Of Inwood Forest Assoc., L.P.*, 484 U.S. 365, 375-76.

33.  The Debtor cannot meet this burden.  The Debtor commenced the Chapter 7 Case to liquidate, not reorganize, its assets.  Accordingly, there can be no dispute that the Collateral is not necessary to an effective reorganization.  As of the Commencement Date, the Debtor had no employees, no capital, no intention to continue its business operations, and no ability to exploit the intellectual property that comprises the Collateral.  *See* Docket No. 1 (Debtor's Petition).  In choosing to liquidate under chapter 7, the Debtor has itself demonstrated that it has no prospects for reorganization.  Accordingly, the Court should vacate the automatic stay to permit Avantra to pursue its rights and remedies against the Collateral.

34.  Moreover, any effort of the Chapter 7 Trustee to effect a sale of the Debtor's property under section 363 of the Bankruptcy Code would likely fail to realize any cash proceeds for distribution to unsecured creditors.  Avantra's position as a secured claimholder with liens on substantially all of the Debtor's property allows it to "credit bid" under section 363(k) of the Bankruptcy Code.  Thus, any potential purchaser desiring to purchase the Debtor's property would necessarily have to bid in excess of $2.8 million for the highly technical intellectual property comprising the Collateral that can best be used only by a party with the technical expertise and experience that Avantra enjoys, and the willingness to commit millions in additional capital to develop a new business venture, with all the risks that entails.

## **WAIVER OF RULE 4001(A)(3)**

35.  Rule 4001(a)(3) of the Bankruptcy Rules provides that there shall be a stay of ten (10) days from the entry of an order granting relief from the automatic stay unless otherwise ordered by the court. Fed. R. Bankr. P. 4001(a)(3).  If the Court determines to grant the Motion, Avantra submits that the ten-day stay ordinarily applicable to the order should be

NYA 615619.12

waived in the Chapter 7 Case because no prejudice to the Debtor or its other creditors would result from waiver of the ten-day period. Indeed, to the contrary, the ten-day stay will prejudice only Avantra's interests. As demonstrated herein, the Debtor has no intention of using the Collateral, Avantra is the sole holder of first priority liens on the Collateral, Avantra has satisfied the statutory requirements for relief from the automatic stay, and any further delays in Avantra's efforts to obtain the Collateral through the exercise of its contractual, state and federal law rights will result in a further decline in the Collateral's value, with no compensating adequate protection to protect Avantra's interests.

## **NOTICE**

36. Notice of this Motion has been provided by first-class mail to (i) the Chapter 7 Trustee, (ii) the Debtor, (iii) SV Bank, (iv) Comerica Bank San Jose, (v) F&R, (vi) the Subordinated Lienholders, and (vii) the creditors listed on the Debtor's creditor matrix attached to the Debtor's petition. Avantra submits that such notice is sufficient and proper and no other or further notice need be provided.

## CONCLUSION

WHEREFORE Avantra respectfully requests that this Court enter an Order, substantially in the form attached hereto as "Exhibit N": (i) granting the Motion in its entirety, (ii) waiving the ten day stay ordinarily applicable under Rule 4001(a)(3) of the Bankruptcy Rules; and (iii) granting such other and further relief as the Court deems just and appropriate under the circumstances.

Dated:     January 12, 2010
           Boston, Massachusetts

/s/Christopher L. DeMayo
Christopher L. DeMayo, Esq.
DEWEY & LEBOEUF LLP
260 Franklin Street
Boston, MA 02110
Telephone: (617) 748-6800
Facsimile: (617) 439-0341

-and-

Judy G.Z. Liu, Esq.
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York  10019
Telephone: (212) 259-8000
Facsimile: (212) 259-6333

*Attorneys for Avantra Biosciences Corporation*

NYA 615619.12